STURGES (BANK OF CLEVELAND v.). See Case No. 861.

---

## Case No. 13,566.

### STURGES v. COLBY et al.

[2 Flip. 163;[1] 10 Chi. Leg. News. 305; 7 Am. Law Rec. 48; 3 Cin. Law Bul. 643; 18 N. B. R. 168.]

Circuit Court, N. D. Ohio.    April Term, 1878.

BANKRUPTCY—SUBSCRIPTIONS, WHEN LEGAL OBLIGATIONS—BURDEN OF PROOF.

1. Subscriptions in aid of college endowments become fixed and legal obligations as soon as the college performs its undertaking.

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

2. Thus becoming valid contracts they may be proved in bankruptcy.

3. Whenever the subscriptions are settled by giving promissory notes, every presumption of law favors the validity of the transaction, and the onus of proof is on the one denying it, if he would impeach it.

[This was a suit by Stephen B. Sturges, assignee of Hubbard Colby, bankrupt, against Hubbard Colby, Denison University, and others.]

Durlam & Seyman, for complainant.

Bishop & Adams, for Denison University.

WELKER, District Judge. This was a proceeding by the assignee to settle and have declared the liens of the different lien holders on the bankrupt's estate, and the amount and priority of such liens, and for a sale of the property. The Denison University was made a party defendant, and called upon to answer and state the amount of its claim and the nature thereof. To this the university answered, setting forth its claim and mortgage to secure the same as hereinafter stated.

After the coming in of this answer, the plaintiff filed a supplemental petition setting forth that a portion of the debt secured to the university was a gift voluntarily made by Colby while insolvent, and should be set aside as to creditors, it being a subscription to the university endowment fund.

To this supplemental petition the university answered: (1) Denying the charge of insolvency. (2) If the facts stated in the supplemental petition were true as to the insolvency, the consideration of so much of the university claims as are founded on subscriptions to its funds, as in its answers set forth, was sufficient and valid.

The character of the subscription will appear in the subsequent statements in this opinion. By the answers of the university it is seen that disclosures are called for both by the original and supplemental bills. These answers being responsive to the requirements called for by the petition, no testimony is needed to sustain the answers. It will be seen that to set aside a portion of the university's claim the supplemental petition alleges that ever since 1864 Colby has been insolvent. This is denied, and it is denied that he was insolvent in January, 1872, or before that time. The answer to the supplemental petition then states in substance that in the fore part of the year 1865 the university, through its agents to carry out more fully the objects of its organization, proceeded to raise an endowment fund of $100,000, and Colby subscribed $2,000; and at great expense said university proceeded until the full sum of $100,000 was subscribed and raised. That said Colby examined said subscriptions and fund raised, and found and agreed with this defendant (university,) and represented to and agreed with the other subscribers to said fund that said $100,000

had been raised. And, therefore, said Colby, in satisfaction of his subscription, in November, 1866, gave his note for $2,000, dated November 1, 1866, at two years, with interest annually from November 1, 1866. Said Colby induced others to settle their subscriptions to said fund.

Said $2,000 note was taken in payment of said Colby's subscription. That in consequence of said subscriptions, greatly increased expenses and extension of facilities have been entered upon by said university.

That in January, 1872, the university was in need of a new building and sought subscriptions for it, and Colby subscribed $500, and paid down $100. The building was built on the strength and faith of this and other subscriptions.

That March 27, 1872, Colby made a loan of said university of $7,500, part of said endowment fund, and gave the mortgage set out and attached to the answer to the original bill. Of this $7,500, the sum of $2,052 was for amount due on said note of $2,000 given in settlement and satisfaction of said original subscription; and $400 was for the second subscription, being the one of $500. The balance to make said $7,500 loan was advanced in cash, being $5,048. Both of said subscriptions were in manner aforesaid satisfied, settled and discharged.

The facts of the case being as before stated, we will proceed and see what the law as applicable to this state of facts is. In Ohio it is the policy of the law to promote and favor the interests of education.

In 16 Ohio State, on page 27 (Ohio Wesleyan Female College v. Higgins) Judge Scott, in giving the opinion of the court, says: "It has at all times been the declared policy of this state to favor and promote the interests of education and the general diffusion of knowledge among the people. To this fact the provisions of the constitution itself, our system of school laws and acts providing for the incorporation of institutions of learning, bear ample testimony." On page 28, the court further say: "This subscription then was authorized by law. It was evidently intended by the maker that the managing officers of the corporation should rely upon it as a part of the means and resources of the institution. It was but reasonable that they should rely upon the solemn pledge thus given, and incur liabilities upon the faith of it. And that such liabilities were in fact incurred, the petition distinctly avers."

The question here raised is not a new question in courts of bankruptcy. It was before the United States court in and for the district of Delaware, and was decided about the year 1875 in the case of Capelle v. Trinity M. E. Church [Case No. 2,392]. The following is the syllabus of the case: "A claim was proved by a church corporation, founded upon a verbal promise by a bankrupt to M. that he (the bankrupt) would pay $800, if M. would subscribe a portion of the

indebtedness due from the church to M., the promise being subsequently publicly announced in the church in the presence of the congregation. It appeared by the proof that the expenses had been incurred by the trustees of the church upon the faith of the subscriptions generally, though not that any definite expenditure was made on the faith of this particular subscription. Held, that the promise was founded on a good legal consideration upon two alternative grounds. It is one of two mutual promises for the benefit of the church, each being the consideration of the other, and the claim provable by the beneficiary; and, secondly, as a promise to the church, partly upon which expenses were incurred, it would sustain an action of assumpsit, and might be proved in bankruptcy."

See, also, Amherst Academy v. Cowls, 6 Pick. 427, particularly as to consideration and burthen of proof, notes being given.

The case of Farmers' College v. Executors of McMicken, 2 Disn. 495, is another Ohio authority supporting the claim of the university.

In this case it is distinctly held: "1st. A gratuitous subscription, to pay certain moneys toward a particular stated fund to be raised for the endowment of certain professorships in a college, become a fixed legal obligation as soon as the college has performed its undertaking and raised the required amount of reliable subscriptions. 2d. Such subscription to the college to do an act if the college will perform a prescribed duty on its part, if accepted, makes the contract complete."

In Williams College v. Danforth, 12 Pick. 541, it is so held more strongly than in the Farmers' College Case, if possible; and is the case of a college, and in substance is like the endowment subscriptions for Denison University.

We will cite no more authorities, but will say in conclusion that if the claim of the university was founded upon the original subscriptions, it would be good according to the authorities.

But in this case, the university's claim is well fortified. If there was ever any doubt, that is obviated by the fact that the original subscription was settled, satisfied, and paid by note of $2,000 ten years ago. Then that note was settled by a new note given on this loan.

The $500 subscription was also settled by a note being given and entering into this $7,500 loan. After such changes and settlements every presumption is in favor of the transaction, and the court will not go behind it. See 6 Pick. 431, opinion of Parker, C. J.

Let a decree be entered for the amount of the money in favor of Denison University.